WO

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States Aviation Underwriters, Inc.;) Employers Insurance of Wausau, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> ) <br> Eurocopter, S.A.S.; Does 1-300, ) <br> ) <br> Defendants. ) <br> ) <br> _____) | No. CV-04-2367-PHX-SRB <br><br> **ORDER** |

Pending before the Court is Plaintiffs United States Aviation Underwriters' ("USAU") and Employers Insurance of Wausau's ("EIW") Motion for Determination of Applicable Law (Doc. 35). For the reasons that follow, Arizona law will be applied in resolving this lawsuit.

**I.    BACKGROUND**

On November 3, 2003, a Eurocopter helicopter crashed at Falcon Field in Mesa, Arizona. The pilot, the flight paramedic, and the flight nurse were injured in the crash.

The helicopter was manufactured in France by Defendant Eurocopter, S.A.S. ("Eurocopter"), a French entity, and was sold in August 2002 to American Eurocopter Corporation ("AEC"), a Delaware corporation doing business in Texas. Roberts Aircraft Company ("Roberts"), a Wyoming corporation with its principal place of business in Wyoming or Colorado, purchased the helicopter from AEC. This sale between AEC and Roberts was embodied in a Purchase Agreement to which Eurocopter was not a party. The

1 Purchase Agreement contains a choice of law provision which states, "[t]his Purchase
2 Agreement and the rights of the parties hereto shall in every respect be governed by and
3 construed in accordance with the substantive laws of the State of Texas without reference to
4 the laws of any other state or jurisdiction." (Stinson Decl., Ex. B, ¶ 8(a).)

5       Roberts leased the helicopter to Native American Air Services, Inc. ("NAA"), a
6 Nevada corporation doing business in Arizona. NAA insured the helicopter through USAU,
7 a New York corporation. NAA operated the helicopter in Arizona.

8       USAU paid Roberts $1,520,000 under the policy for the helicopter's loss. EIW, a
9 Wisconsin corporation, paid more than $26,000 in workers compensation benefits for injuries
10 to the pilot, flight paramedic, and flight nurse.

11       Plaintiffs filed this subrogation action on November 1, 2004, claiming strict products
12 liability and negligence against Eurocopter[1] and filed this Motion for Determination of
13 Applicable Law on September 30, 2005. Plaintiffs contend that Arizona law should control
14 and Defendant contends that either Texas law or French law should control.

15 **II.   LEGAL STANDARDS AND ANALYSIS**

16     **A.   The Choice of Law Clause**

17       Under Arizona's choice of law rules, parties may specify that the law of a particular
18 state will govern their transaction if the "transaction bears a reasonable relation to this state
19 and also to [the other] state." Ariz. Rev. Stat. ("A.R.S.") § 47-1105 (1984). In the Purchase
20 Agreement between Roberts and AEC, the choice of law provision states that the law of

---

[1] Plaintiff USAU alleges that:
> USAU is equitably, statutorily, and/or contractually subrogated to the rights of Native American Air Services, Inc. and others, and plaintiff USAU is a proper Real Party in Interest by way of its rights of subrogation and assignment, up to the extent of the payments made to Native American Air Services, Inc. and others.

(Compl. at 8.)

Texas governs the rights of the parties to the agreement.[2]  At issue is whether Eurocopter is able to enforce the agreement as well as whether the agreement between Roberts and AEC is binding on NAA, and thus binding as to USAU's subrogation claims against Eurocopter.[3]

### 1. Eurocopter May Enforce the Choice of Law Provision

"A choice-of-law clause . . . is a contractual right and generally may not be invoked by one who is not a party to the contract in which it appears." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1165 (9th Cir. 1996). The choice of law provision is only relevant if the parties are bound by the Purchase Agreement. In making this determination, it is appropriate to apply the law which governs the contract itself, which in this instance is Texas law.[4] *See, e.g., Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 202 (Ariz. 1992).

"There is a strong presumption in Texas law against third-party beneficiary agreements, and we must look to the terms of the contract to determine whether the contracting parties expressly demonstrated an intent to depart from that presumption." *Ortega v. City Nat. Bank*, 97 S.W.3d 765, 773 (Tex. App. 2003). In *Ortega*, the court refused to imply third party beneficiary status, looking instead at the document to determine whether the contracting parties' intent to create a third party beneficiary was expressed "clearly and fully." *Id.* Plaintiffs argue that receipt of incidental benefits does not create a

---

[2] Defendant argues that USAU is equitably subrogated to Roberts and the choice of law provision should therefore apply. However, it is unclear from the Complaint whether USAU is actually asserting any claims on behalf of Roberts (given the expansive language asserting the rights of NAA "and others"). (Compl. at 8.) Although contractual choice of law provisions do not ordinarily control the choice of law analysis for tort claims, when contractual interpretation is necessary to resolve the claim, the choice of law provision may also apply to tort claims. *Winsor v. Glasswerks PHX, LLC*, 63 P.3d 1040, 1043 (Ariz. Ct. App. 2003); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988). Thus, if USAU were to assert Roberts' claims, it may be that Texas law would apply to any issues of contract interpretation that may arise regarding such claims.

[3] Defendant concedes that the choice of law provision does not apply to the personal injury claims made by EIW. (Def.'s Resp. at 16, n.14.)

[4] Plaintiffs concede this point. (Pls.' Reply at 6, n.3.)

- 3 -

1. right of enforcement in a third party. *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995
2. S.W.2d 647, 651 (Tex. 1999). While true, parties can create a right of enforcement in a third
3. party if they intend to confer a benefit with a right of enforcement on that party. *Id*.
4. In *Clark v. DeLaval Separator Corp.*, the Fifth Circuit held that a disclaimer between
5. retailer and consumer is not effective to disclaim warranties by the manufacturer unless it
6. specifically disclaims liability for the manufacturer or the manufacturer is "an expressed
7. third-party beneficiary of a disclaimer in the retailer's contract that explicitly disclaims any
8. implied warranties by the manufacturer." 639 F.2d 1320, 1323-24 (5th Cir. 1981). There,
9. the court found that the agreement did not expressly disclaim liability for the manufacturer
10. when it guaranteed the goods "in accordance with the manufacturer's guarantee." *Id.*
11. To overcome the presumption against third party beneficiaries discussed in *Ortega*,
12. the Purchase Agreement must specify the intent of the parties to confer an enforceable
13. benefit on the third party. *Ortega,* 97 S.W.3d at 773. The terms of the warranty provision
14. in the Purchase Agreement explicitly disclaim liability for the manufacturer, mentioning
15. Eurocopter by name, as to all claims of negligence or strict liability. Thus, the contract
16. makes clear that the parties intended to confer a benefit on Eurocopter. Unlike in *Clark*,
17. where the contract included a warranty disclaimer for the retailer but did not expressly
18. mention the manufacturer, the warranty disclaimer in this case expressly disclaims liability
19. as to negligence and strict liability claims, for both the seller *and the manufacturer*. (Stinson
20. Decl., Ex. B, ¶ 4(i).) This provision is clearly intended for Eurocopter's benefit.
21. Although there is a presumption against third-party beneficiary status, the Purchase
22. Agreement is explicit in disclaiming liability for both the seller and Eurocopter. The parties'
23. intent to confer this benefit on Eurocopter is plain. Thus, Eurocopter is an intended third
24. party beneficiary of the Purchase Agreement with a right of enforcement.
25. **2.    NAA is not Bound by the Choice of Law Provision**
26. As stated above, "[t]here is a strong presumption in Texas law against third-party
27. beneficiary agreements, and we must look to the terms of the contract to determine whether
28. the contracting parties expressly demonstrated an intent to depart from that presumption."

- 4 -

1   *Ortega*, 97 S.W.3d at 773.  Defendant argues that NAA is a third party beneficiary of the
2   Purchase Agreement, having received benefits under the warranty, and should be bound by
3   both the favorable and unfavorable terms.  Plaintiffs counter that NAA is a contractual
4   stranger to the agreement and argues that "the fact that a person is directly affected by the
5   parties' conduct . . . does not make him a third-party beneficiary."  *Fleetwood Enters., Inc.*
6   *v. Gaskamp*, 280 F.3d 1069, 1075 (5th Cir. 2002).  In *Willoughby v. Ciba-Geigy Corp.*, the
7   court found that, where a warranty disclaimer had not been disclosed to a non-signatory
8   party, the party could not be bound by the disclaimer.  601 S.W.2d 385, 388 (Tex. App.
9   1979).  Further, "a nonsignatory can only be bound by the terms of . . . an agreement if the
10  nonsignatory is asserting claims that require reliance on the terms of the written agreement."
11  *Sw. Texas Pathology Assocs., L.L.P. v. Roosth*, 27 S.W.3d 204, 208 (Tex. App. 2000).

12          As in *Ortega*, where the court refused to imply third party beneficiary status where
13  the contracting parties did not explicitly express such intent, the warranty provision in the
14  Purchase Agreement does not explicitly confer any benefits on NAA as the lessee of the
15  helicopter.  As in *Fleetwood*, where parties who were not mentioned in the contract, but who
16  received some benefits under it, were deemed to be incidental beneficiaries, NAA was also
17  not mentioned in the Purchase Agreement[5] but may have received some benefit under the
18  warranty provision of the Purchase Agreement.  Furthermore, like in *Southwest Texas*, where
19  the nonsignatory's claim did not seek to enforce the terms of the written agreement, neither
20  NAA nor USAU is seeking enforcement of the terms of the Purchase Agreement.  Although
21  NAA may have benefitted from the Purchase Agreement, NAA is better characterized as an
22  incidental beneficiary rather than a third party beneficiary.

23          The contracting parties did not contemplate NAA as a third party beneficiary, so any
24  benefit received by NAA is merely incidental.  Further, since neither NAA nor USAU is
25  seeking to enforce the Purchase Agreement, neither of these parties are bound by it.  As NAA

---

[5] Neither did the Purchase Agreement contemplate any unnamed lessee who might benefit under the warranty provision.

- 5 -

is not bound by the terms of the Purchase Agreement as a third party beneficiary or as a party seeking to enforce the terms of the contract, USAU as subrogee is also not bound by the choice of law provision in the Purchase Agreement.

### B. The Forum State's Choice of Law Rules

As the choice of law provision does not control and as this is a diversity case, the Court looks to the choice of laws rules of the forum state - here, Arizona - to determine which law to apply.[6] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (extending the *Erie* doctrine to conflict of laws rules). Arizona courts follow the Restatement (Second) of Conflicts of Law. *Cardon*, 841 P.2d at 206; *Schwartz v. Schwartz*, 447 P.2d 254, 257 (Ariz. 1968). Section 6 of the Restatement provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
> > (a) the needs of the interstate and international systems,
> > (b) the relevant policies of the forum,
> > (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> > (d) the protection of justified expectations,
> > (e) the basic policies underlying the particular field of law,
> > (f) certainty, predictability and uniformity of result, and
> > (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

### 1. Relevant Arizona Statutes

Under the Restatement, the first step is to apply any relevant statute from the forum state. Restatement (Second) of Conflict of Laws § 6(1) (1971). Plaintiffs maintain that

---

[6] "When an action raises a potential conflict of law, the first question a court must address is 'whether there is a true conflict between the laws of the two jurisdictions on the issue presented by the litigation.'" *Lucero v. Valdez*, 884 P.2d 199, 207 (Ariz. Ct. App. 1994) (citing *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss,* 991 F.2d 1501, 1506 (9th Cir.1993)). The parties have not addressed whether there is a conflict between the laws of Arizona and either Texas or France, but the analysis will proceed on the assumption that there are likely to be differences between the product liability laws of Arizona and France.

- 6 -

A.R.S. § 28-8208(A) requires application of Arizona law to the personal injury claims and that A.R.S. § 28-8208(B) requires application of Arizona law to the property damage claims.

Section 28-8208(A) provides that "[a]ny . . . tort . . . that is committed . . . against an aeronaut or passenger while in flight over this state is governed by the law of this state." *Id.* The parties offer differing views as to where the tort was "committed." Defendant asserts that the tort was "committed" in France, where the helicopter was designed and manufactured, and EIW contends that the tort was "committed" in Arizona, where the helicopter took off and crashed. Arizona courts have not discussed this issue and there is little authority from other jurisdictions.[7]

Both sides offer plausible interpretations of the statute. The question is whether the legislature intended for the law to apply to situations like the present, where an aircraft was manufactured in a different jurisdiction but flew and crashed in Arizona. To discern this intent, courts "construe the statute as a whole, and consider its context, language, subject matter, historical background, effects and consequences, and its spirit and purpose." *People's Choice TV Corp. v. City of Tucson,* 46 P.3d 412, 414 (Ariz. 2002). Plaintiffs contend that sections 28-8208(A) and 28-8208(B),[8] taken together, demonstrate the

---

[7] Defendant cites several cases purportedly in support of the argument that the locus of a products liability tort is where the alleged misconduct occurs, including *In Re Aircrash Disaster Near Roselawn, Ind.*, 1997 U.S. Dist. LEXIS 13794, 16 (N.D. Ill. Sept. 9, 1997); *Baroldy v. Ortho Pharm. Corp.*, 760 P.2d 574, 579 (Ariz. Ct. App. 1988); *Garcia v. Gen. Motors Corp.*, 990 P.2d 1069, 1076 (Ariz. Ct. App. 1999); and *Winsor,* 63 P.3d at 1044. However, these do not address whether a tort occurs at the place of injury or misconduct; rather, these cases utilize the significant relationship test to determine choice of law. This test is only pertinent if there is no relevant statute. *See* discussion *infra* Part B.2.

Plaintiffs cite *State v. Dickens* in support of a plain meaning interpretation of A.R.S. § 48-113, the statute preceding section 28-8208(A), which stated, "all air torts, crimes, wrongs shall be governed by Arizona law." 183 P.2d 148, 152 (1947). However, in *Dickens*, the court was not attempting to interpret the statute in reference to where the tort occurred but was rather comparing it to another statute to determine if the statutes were in conflict.

[8] Section 28-8208(B) provides that "[t]he law of this state determines whether damage by or to an aircraft while in flight over this state is a tort, a crime or any other wrong by or against the owner of the aircraft." A.R.S.§ 28-8208(B).

legislative intent for Arizona law to apply to all injuries to person or property sustained while in flight over Arizona.

The Court agrees. It seems highly unlikely that the legislature would enact legislation applying Arizona law to "wrongs" occurring while in flight over Arizona but excluding scenarios where the aircraft was designed or manufactured elsewhere. This conclusion is strengthened by the language of section 28-2808(B), which clearly requires application of Arizona law to torts arising out of damage to aircrafts "while in flight" over Arizona, regardless of where that aircraft was manufactured or designed.[9] It makes little sense that if a helicopter that is manufactured elsewhere crashes in Arizona, the personal injury claims could be controlled by the law of a different jurisdiction but the property damage claims would be controlled by Arizona law.[10] There is no reason to believe that the legislature intended such a result when it enacted section 28-2808. Because the injury occurred while in flight over Arizona, section 28-8208(A) controls and the Court will apply Arizona law to EIW's claims against Defendant.[11]

Next, the Court turns to the question of whether 28-8208(B) applies to USAU's claims against Defendant. Defendant argues that section 28-8208(B) does not apply as it is merely "a statement of a settled proposition" that general tort law applies. (Def.'s Resp.

---

[9] Defendant disputes that interpretation, as will be seen below.

[10] This result is especially anomalous given that if two different sources of law governed the same incident, one would expect Arizona law to apply to the personal injury claim and the law of the jurisdiction where the helicopter was manufactured and designed to apply to the products liability claims.

[11] The Court can provide no explanation as to the language variation between sections 28-8208(A) and (B). Whereas section 28-8208(A) provides that "a tort committed against . . . a passenger *is governed* by [Arizona law]," section 28-8208(B) states that "[Arizona law] *determines* whether damage . . . to an aircraft . . . is a tort." It is unclear why the legislature chose to employ the passive voice in the first section and the active in the next, and the verb "governed" in the first section and "determined" in the next, when the guiding principle behind both sections appears to be the same: Arizona law determines whether a "wrong" has occurred, regardless of whether that wrong is against person or property.

- 8 -

at 15.) This argument would render the statute meaningless. An important rule of statutory construction is that "a statute will be given such an effect that no clause, sentence, or word is rendered superfluous, void, contradictory or insignificant." *State ex rel. Dep't of Econ. Sec. v. Hayden*, 115 P.3d 116, 117 (Ariz. 2005) (quoting *Bilke v. State,* 80 P.3d 269, 271 (Ariz. 2003)). The plain meaning of section 28-8208(B) is that if there is damage to an aircraft which occurs while in flight, Arizona law will apply to determine whether there is a tort. Here, because damage occurred to the helicopter while it was in flight over Arizona, the Court will apply Arizona law to USAU's claims against Defendant.

## 2. The Most Significant Relationship Test

Alternatively, even if there were no relevant statute, Arizona law would still apply in light of the Restatement's "most significant relationship test." *Schwartz*, 447 P.2d at 257. That test requires that the court apply the law of the state with "the most significant relationship to the occurrence and the parties." Even under this alternative analysis, Arizona law should apply. The factors to be considered, for tort claims, are:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil (sic), residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971). Further consideration in this analysis also must be given to the needs of the international system, the forum state's policies, the interests of the different jurisdictions, "certainty, predictability, and uniformity of result", "justifiable expectations", the basic policies underlying product liability law, and the "ease in the determination and application of the law to be applied." Restatement (Second) of Conflict of Laws § 6(2) (1971).

The place where the injury occurred is the first factor in determining the most significant relationship. Restatement (Second) of Conflict of Laws § 145(2) (1971). "In the case of personal injuries or injuries to tangible things, the place where the injury occurred is

1   a contact that, as to most issues, plays an important role in the selection of the state of the
2   applicable law." Restatement (Second) of Conflict of Laws § 145 cmt. e. However, "the
3   state where the injury occurs does not have a strong interest in compensation if the injured
4   plaintiff is a non-resident." *Bryant v. Silverman,* 703 P.2d 1190, 1194 (Ariz. 1985).
5   Additionally, if the place of injury is fortuitous or bears little relation to the occurrence and
6   the particular issue or when the defendant would not be likely to foresee the injury occurring
7   in that particular state, then the place of injury is also less significant. Restatement (Second)
8   of Conflict of Laws § 145 cmt. e.; *see also Baroldy,* 760 P.2d at 579 (finding the place of
9   injury fortuitous where plaintiff was only there on a temporary basis when she was injured).
10  Unlike in *Baroldy*, where the place of injury was fortuitous because the injured party was
11  only there temporarily, the location of the helicopter crash here is not fortuitous since the
12  helicopter was only operated in Arizona. The place of injury is clearly Arizona, weighing
13  in favor of the application of Arizona law.

14  The next factor in determining the most significant relationship is the place where
15  conduct causing the injury occurred. Restatement (Second) of Conflict of Laws § 145(2)
16  (1971). This factor is particularly strong if there is no clearly demonstrable place of injury
17  or if the purpose of the area of tort law is to punish or deter misconduct. Restatement
18  (Second) of Conflict of Laws § 145, cmt. e; *see also Roselawn,* 1997 U.S. Dist. LEXIS
19  13794, at *23 (applying French law to punitive damages claim against a French aircraft
20  manufacturer). That there is a clearly demonstrable place of injury weakens this factor, yet
21  France clearly has an interest in deterring dangerous products from being manufactured
22  within its borders. As in *Roselawn*, where French law was applied to further the purpose of
23  deterrence, the place where the conduct occurred weighs in favor of applying French law.

24  Next, the domicile, residence, nationality, place of incorporation and place of business
25  of the parties is considered. Restatement (Second) of Conflict of Laws § 145(2) (1971). The
26  locations where the parties are incorporated or doing business are scattered, with only a few
27  contacts in Arizona, France, or Texas. Eurocopter is a French entity. NAA's principal place
28  of business was Arizona and the flight paramedic and the flight nurse are both domiciled in

- 10 -

Arizona. If only considering the named parties to this action, the scale would tip toward France for this factor, as Eurocopter is the only named party in France, Texas, or Arizona. There is no authority as to whether a subrogee "stands in the shoes" of the subrogor when considering residence as a state contact, yet courts consistently situate a subrogee "in all respects in the place of the party to whose right he is subrogated." *Brown v. Rouse,* 58 P. 267 (Cal. 1899). *See also W. Agr. Ins. Co. v. Chrysler Corp.*, 6 P.3d 768, 772 (Ariz. Ct. App. 2000). If putting the subrogee in place of the subrogor in all respects, it would follow that NAA's place of business and the residence of the flight paramedic and the flight nurse are also significant. This factor is fairly balanced between Arizona and France, with parties in both locations.

The final factor is the place where the relationship between the parties is centered. Restatement (Second) of Conflict of Laws § 145(2) (1971). "When there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered." Restatement (Second) of Conflict of Laws § 145, cmt. e. The parties do not have any direct relationship and are only remotely connected by the helicopter, which was being operated in Arizona.

Balancing the contacts yields a close result, but Arizona has the strongest connection. The Court's approach is not "merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found." *Johnson v. Spider Staging Corp.*, 555 P.2d 997 (Wash. 1976) (citing Restatement (Second) of Conflict of Laws § 145 (1971)). The injury clearly occurred in Arizona when the helicopter crashed. As in *Bryant*, where the plaintiff was not a resident of the state in which the injury occurred, neither USAU nor EIW are residents of Arizona, lessening the persuasive weight of this factor. However, the flight paramedic and the flight nurse are both residents of Arizona and NAA's principle place of business was Arizona. Arizona clearly has an interest in aircraft accidents occurring within the state, especially for those aircraft operated entirely within Arizona's borders by a company doing business in Arizona. Additionally, applying Arizona

- 11 -

1  law to an accident occurring within Arizona would provide "certainty, predictability, and
2  uniformity of result." While Eurocopter may have had no way of knowing in which state the
3  helicopter would ultimately be used, Eurocopter must have expected it to be used somewhere
4  in the United States rather than in France.

5  Although France does have a significant relationship to the occurrence and the parties,
6  it is not the "most significant relationship." The place where the alleged conduct occurred,
7  causing the injury, is France, where the helicopter was manufactured. However, "ease in the
8  determination and application of the law" weighs against the application of French law in a
9  court sitting in Arizona.

10 Clearly, Texas has no significant contacts with the parties or the issue and therefore
11 Texas law should not be applied. Defendant argues that the parties' "justifiable expectations"
12 would be that Texas law applies because of the choice of law provision in the Purchase
13 Agreement. However, this argument is unavailing given that Plaintiffs were not parties to
14 that agreement nor were they third party beneficiaries of that agreement. Defendant's
15 expectation that an agreement, to which neither NAA nor USAU were parties, will control
16 what law is applied is not justifiable here.

17 Therefore, Arizona has the most significant relationship to the occurrence and the
18 parties. Although there are some significant contacts with France, there are more significant
19 contacts with Arizona and the application of Arizona law by a court sitting in Arizona
20 furthers the purpose of "certainty, predictability, and uniformity of result."

21 **III.    CONCLUSION**

22 The Court concludes that Arizona law governs this action. First, the choice of law
23 clause in the Purchase Agreement does not control because USAU is not bound by that
24 agreement. Therefore, the Court looks, as the Restatement requires, to the existence of a
25 relevant statutory directive. A.R.S. § 28-8208 mandates the application of Arizona law in
26 tort claims relating to both personal injury and property damage where, as here, the damage
27 occurred while in flight over Arizona. Even if that statute did not control, Arizona law still
28 applies because Arizona has the most significant relationship to the helicopter crash.

**IT IS ORDERED** granting Plaintiffs' Motion for Determination of Applicable Law, applying Arizona law to Plaintiffs' tort claims (Doc. 35).

DATED this 7th day of July, 2006.

_____
Susan R. Bolton
United States District Judge